**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| In re REMICADE ANTITRUST LITIGATION | Civil Action |
|---|---|
| This document relates to:<br><br>Direct Purchaser Actions | No. 18-cv-00303 (consolidated) |

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL INDIVIDUAL ARBITRATION AND STAY PROCEEDINGS

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... ii

STATEMENT OF FACTS .......... 1

A. The Plaintiff and its Purported Class Claims .......... 1

B. The Arbitration Agreement .......... 1

LEGAL STANDARD .......... 2

I. Rochester is obligated to arbitrate its antitrust claims against Janssen .......... 3

II. Proceedings in this Court should be stayed pending arbitration .......... 5

CONCLUSION .......... 5

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Express Co. v. Italian Colors Rest.*,
570 U.S. 228 (2013)....................3

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011)....................5

*Boatright v. Aegis Def. Servs., LLC*,
938 F. Supp. 2d 602 (E.D. Va. 2013)....................5

*Century Indem. Co. v. Certain Underwriters at Lloyd's*,
584 F.3d 513 (3d Cir. 2009)....................2

*Cirino v. L. Gordon Holdings, Inc.*,
No. 13-cv-4800, 2014 U.S. Dist. LEXIS 86253 (E.D. Pa. June 24, 2014)....................4

*Emplr. Trs. of W. Pa. Teamsters v. Union Trs. of W. Pa. Teamsters*,
870 F.3d 235 (3d Cir. 2017)....................3

*Green Tree Fin. Corp.-Ala. v. Randolph*,
531 U.S. 79 (2000)....................3

*Korea Week, Inc. v. GOT Capital, LLC*,
No. 15-cv-6351, 2016 U.S. Dist. LEXIS 69646 (E.D. Pa. May 27, 2016)....................5

*Lloyd v. Hovensa*,
369 F.3d 263 (3d Cir. 2004)....................5

*Miron v. BDO Seidman, LLP*,
342 F. Supp. 2d 324 (E.D. Pa. 2004) (Joyner, J.)....................3

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
473 U.S. 614 (1985)....................4

*In Re Pharmaceutical Benefit Managers Antitrust Litigation*,
700 F.3d 109 (3d Cir. 2012)....................4

*In re Polyurethane Foam Antitrust Litig.*,
998 F. Supp. 2d 625 (N.D. Ohio 2014)....................4

*Quilloin v. Tenet HealthSystem Phila., Inc.*,
673 F.3d 221 (3d Cir. 2012)....................5

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Rochester Drug Coop., Inc. v. Biogen Idec U.S. Corp.*,
130 F. Supp. 3d 764 (W.D.N.Y. 2015) .......... 1

*Silfee v. Auto. Data Processing, Inc.*,
696 F. App'x 576 (3d Cir. 2017) .......... 2

**Statutes**

9 U.S.C. § 1 *et seq.* .......... 1, 3

9 U.S.C. § 3 .......... 5

Pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, Defendants Johnson & Johnson and Janssen Biotech, Inc. (collectively "Janssen") respectfully submit this memorandum of law in support of their motion to compel Plaintiff Rochester Drug Cooperative, Inc. ("Rochester") to arbitrate its claims on an individual basis as required by the arbitration provision in its agreement with Janssen and to stay proceedings in this Court pending arbitration.

## STATEMENT OF FACTS

### A. The Plaintiff and its Purported Class Claims

Rochester is a distributor of pharmaceutical products. It purchases those products from manufacturers like Janssen, and resells them to pharmacies or other providers. *See Rochester Drug Coop., Inc. v. Biogen Idec U.S. Corp.*, 130 F. Supp. 3d 764, 767 (W.D.N.Y. 2015).

On February 21, 2018, Rochester filed a complaint against Janssen alleging claims under the federal antitrust laws related to Janssen's sales of the biologic drug Remicade. *See* Amended Direct Purchaser Class Action Complaint ("Dir. CAC") ¶¶ 1, 173–86. Rochester alleges that it "purchased Remicade (infliximab) directly from Defendants" and seeks to represent a class of direct purchasers including all other persons or entities that purchased Remicade directly from Janssen. Dir. CAC ¶¶ 35, 148. Two other related complaints have been filed: one by Pfizer Inc., the manufacturer of a competing biologic pharmaceutical product; and one by a group of plaintiffs bringing purported class action claims on behalf of entities that purchased or reimbursed for Remicade but did not purchase it directly from Janssen. *See* ECF No. 22 (Case Management Order No. 1) at 1.

### B. The Arbitration Agreement

Although Rochester alleges that it directly purchases Remicade from Janssen, its complaint does not address the terms governing its purchases. Rochester's purchases from Janssen and other Johnson and Johnson entities are in fact governed by a Distribution Agreement

between the parties effective as of October 1, 2015.[1] The Distribution Agreement includes a comprehensive dispute resolution procedure governing "[a]ny controversy or claim arising out of or relating to this agreement." Distribution Agreement § 4.21(a). The Distribution Agreement requires that any such claim be submitted to an initial mediation and, if mediation fails, an arbitration proceeding conducted under the Commercial Arbitration Rules of the AAA. *Id.* § 4.21(b). The parties explicitly and irrevocably waived the "RIGHT TO TRIAL OF ANY ISSUE BY JURY." *Id.* § 4.21(d) (capitalization in original). And the Distribution Agreement provides that there "shall be no right or authority for any claims to be arbitrated on a class action basis." *Id.* § 4.21(c).

## LEGAL STANDARD

As a threshold matter, the Third Circuit made clear last year that "arbitrability is a 'gateway' issue, so 'a court should address the arbitrability of the plaintiff's claim *at the outset* of the litigation,'" before deciding a motion to dismiss. *Silfee v. Auto. Data Processing, Inc.*, 696 F. App'x 576, 577 (3d Cir. 2017) (emphasis in original) (quoting *Reyna v. Int'l Bank of Commerce*, 839 F.3d 373, 378 (5th Cir. 2016)).

Parties are compelled to arbitrate their claims when "there is a valid agreement to arbitrate between the parties" and "the merits-based dispute in question falls within the scope of that valid agreement." *Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 527 (3d Cir. 2009). The party opposing enforcement of the arbitration agreement "bears the burden"

---

[1] A copy of the Distribution Agreement is attached as Exhibit A. The Distribution Agreement is between Rochester and JOM Pharmaceuticals Inc., which is a Johnson & Johnson entity that handles distributor contracting on behalf of Janssen. Janssen Biotech, Inc. is explicitly listed on Schedule A of the agreement as one of the entities from which Rochester will purchase pursuant to the Distribution Agreement and the arbitration provision governs "any controversy or claim involving the parent company, subsidiaries, or affiliates under common control" of either company. Distribution Agreement § 4.21(a); Schedule A, p. 22. The Distribution Agreement further notes that Janssen Biotech is the entity from which Remicade is purchased. Distribution Agreement, Schedule C, p. 35.

of proving that the claims are not subject to arbitration. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000).

"[C]ourts must 'rigorously enforce' arbitration agreements according to their terms. *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U. S. 213, 221 (1985)). There is a federal policy favoring arbitration, expressed through the Federal Arbitration Act, 9 U.S.C. § 1 *et seq*., and "where the contract contains an arbitration clause, there is a presumption of arbitrability" and "any doubts concerning the scope of arbitral issues should be resolved in favor of arbitration." *Emplr. Trs. of W. Pa. Teamsters v. Union Trs. of W. Pa. Teamsters*, 870 F.3d 235, 240–41 (3d Cir. 2017) (internal quotation marks omitted). "The presumption of arbitrability is particularly strong when the arbitration clause in question is broad." *Miron v. BDO Seidman, LLP*, 342 F. Supp. 2d 324, 328 (E.D. Pa. 2004). "To overcome this presumption as applied to broad arbitration agreements, a party must either establish the existence of an express provision excluding the grievance from arbitration, or provide 'the most forceful evidence of a purpose to exclude the claim from arbitration.'" *Id.* at 329 (quoting *AT&T Techs. v. Communs. Workers of Am.*, 475 U.S. 643, 650 (1986)).

Here, the basis for Rochester's claims is its direct purchase of Remicade from Janssen. The Distribution Agreement governs Rochester's purchases of Remicade, and the broad arbitration clause encompasses any dispute "arising out of or relating to" the agreement. Arbitration is required.

## I. ROCHESTER IS OBLIGATED TO ARBITRATE ITS ANTITRUST CLAIMS AGAINST JANSSEN

Rochester entered into a valid and binding agreement with Janssen that covers its purchase of Remicade. The only injury it alleges in its complaint is that it pays "higher prices to purchase the relevant products." Dir. CAC ¶ 186. The Distribution Agreement covers the entire

time period relevant to Rochester's complaint. Rochester's proposed class period begins on April 1, 2016. Dir. CAC ¶ 148. The Distribution Agreement has been in effect since October 1, 2015, and so covers the entire relevant period. Distribution Agreement § 4.1.

In the Agreement, Rochester agreed to arbitrate "[a]ny controversy or claim arising out of or relating to this agreement," which broadly governs all purchases of referenced drug product from Janssen and its affiliates. One of the referenced drug products is Remicade. Distribution Agreement, Schedule C, p. 35. Such broad language has consistently been held to cover antitrust claims. For example, in *In Re Pharmaceutical Benefit Managers Antitrust Litigation*, 700 F.3d 109 (3d Cir. 2012), the Third Circuit recognized that an agreement with nearly identical language, covering "[a]ny and all controversies in connection with or arising out of" the agreement at issue covered antitrust claims. *Id.* at 116 (alteration in original); *see also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 624 n.13 (1985) ("[A]rising out of or relating to" is a "broad clause" applicable to antitrust claims.); *In re Polyurethane Foam Antitrust Litig*., 998 F. Supp. 2d 625, 645 (N.D. Ohio 2014) (compelling arbitration of direct purchaser's price-fixing claims); *Cirino v. L. Gordon Holdings, Inc.*, No. 13-cv-4800, 2014 U.S. Dist. LEXIS 86253, at *14–15 (E.D. Pa. June 24, 2014) (holding that an arbitration agreement covering "any controversy or claim" included federal statutory claims).

This is only logical. Rochester's claim that it pays higher prices for Remicade "aris[es] out of or relat[es]" to the Distribution Agreement governing its purchase of Remicade. *See* Distribution Agreement § 4.21(a). Rochester's purchase of Remicade is governed by the Distribution Agreement; if it pays allegedly supracompetitive prices, that payment is encompassed within the Distribution Agreement, which sets forth the terms on which Rochester buys Remicade.

The Distribution Agreement also states that there "shall be no right or authority for any claims to be arbitrated on a class action basis." *Id.* § 4.21(c). Class-action waivers in arbitration agreements are enforceable. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 351–52 (2011). Here, the Distribution Agreement is explicit: class-action arbitration is explicitly prohibited. Thus, Rochester is compelled to arbitrate its claims on an individual basis.[2]

## II. PROCEEDINGS IN THIS COURT SHOULD BE STAYED PENDING ARBITRATION

In the Third Circuit, when a motion to compel arbitration is granted, "a stay, rather than a dismissal, is the required course of action." *Quilloin v. Tenet HealthSystem Phila., Inc.*, 673 F.3d 221, 227 n.2 (3d Cir. 2012) (internal quotation marks omitted); *Lloyd v. Hovensa*, 369 F.3d 263, 269 (3d Cir. 2004) (holding that the district court is "obligated under 9 U.S.C. § 3 to grant the stay once it decided to order arbitration"). The stay allows this Court to retain jurisdiction over any ancillary issues and to enter a judgment on the award. *Lloyd*, 369 F.3d at 270.

## CONCLUSION

Rochester entered into a valid agreement including an arbitration provision that unambiguously covers the claims it purports to bring in this case. The Court should enter an order compelling Rochester to arbitrate its claims on an individual basis and stay the proceedings pending arbitration.

Dated: April 9, 2018

---

[2] Rochester's agreement to arbitrate claims with Janssen would ultimately preclude it from maintaining a class action here in any event. "Plaintiffs cannot continue to pursue . . . the claims alleged on behalf of the purported class if their individual claims must proceed in arbitration." *Boatright v. Aegis Def. Servs., LLC*, 938 F. Supp. 2d 602, 611 (E.D. Va. 2013). This is because "[c]lass representatives with rights to sue which vary from the absent class members are inadequate under Rule 23." *Korea Week, Inc. v. GOT Capital, LLC*, No. 15-cv-6351, 2016 U.S. Dist. LEXIS 69646, at *39 (E.D. Pa. May 27, 2016). And a plaintiff cannot serve as an adequate class representative if it is unable to pursue a class action due to a waiver. *Id.*

Respectfully Submitted,

By: */s/ Leslie E. John*
Leslie E. John (PA Id. No. 62290)
Matthew I. Vahey (PA Id. No. 315920)
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Tel: (215) 665-8500
john@ballardspahr.com
vaheym@ballardspahr.com

William F. Cavanaugh (admitted *pro hac vice*)
Adeel A. Mangi (admitted *pro hac vice*)
Jonathan H. Hatch (admitted *pro hac vice*)
Jamison Davies (admitted *pro hac vice*)
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036-6710
Tel: (212) 336-2000
wfcavanaugh@pbwt.com
aamangi@pbwt.com
jhatch@pbwt.com
jmdavies@pbwt.com

Thomas O. Barnett (*pro hac vice* forthcoming)
Ashley E. Bass (*pro hac vice* forthcoming)
COVINGTON & BURLING LLP
850 Tenth Street, NW
Washington, DC 20001-4956
Tel: (202) 662-6000
tbarnett@cov.com
abass@cov.com

*Counsel for Johnson & Johnson and Janssen Biotech, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 9, 2018, I electronically filed the foregoing brief in support of Defendants' Motion to Compel Individual Arbitration and Stay Proceedings using the CM/ECF system, which will send notification of such filing to all parties of record.

*/s/ Leslie E. John*